ESTHER KIRSNER *v.* STATE OF MARYLAND

[No. 7, January Term, 1944.]

2

*Decided March 23, 1944.*

The cause was argued before SLOAN, C. J., DELAPLAINE, COLLINS, MARBURY, GRASON, and BAILEY, JJ.

*J. Wallace Bryan,* with whom was *Robert R. Carman* on the brief, for the appellant.

*J. Edgar Harvey, Assistant Attorney General,* and *Thomas N. Biddison, Assistant State's Attorney of Baltimore City,* with whom were *William C. Walsh, Attorney General, Simon Sobeloff, City Solicitor,* and *J. Bernard Wells, State's Attorney,* on the brief, for the appellee.

BAILEY, J., delivered the opinion of the court.

There are eight appeals in this record. Each appeal is from a judgment of the Criminal Court of Baltimore City, entered on April 8, 1943, sentencing the defendant, Esther Kirsner, appellant in this court, to pay fines ranging from $250 to $1,500 in the several cases. The appellant was indicted for alleged violations of Ordinance

No. 578 of the Mayor and City Council of Baltimore, approved October 31, 1941 (hereinafter called the "Building Code"), and of Ordinance No. 384, approved March 6, 1941 (hereinafter called the "Health Ordinance"). The cases were numbered consecutively from No. 5180 to No. 5187 in the Criminal Court and they will be referred to by their respective numbers in this opinion. Each case involves a separate property. The properties are located on Linden Avenue and Eutaw Place, in Baltimore City, and were existing dwellings at the time of the adoption of the said ordinances. The indictments in cases Nos. 5180, 5181, 5184 and 5185 contain two counts, the first count charging violations of the Building Code and the second count charging violations of the Health Ordinance. Each indictment in the remaining cases contains a single count, in cases Nos. 5182, 5183 and 5187 charging violations of the Building Code and in case No. 5186 charging violations of the Health Ordinance. The appellant demurred to each indictment and to each count of the indictments containing two counts. The demurrers were overruled, whereupon she submitted under a plea of *nolo contendere* in each case. After the imposition of the sentences, identical motions were filed in all cases asking that the sentences be stricken out.

The first question for our determination is the sufficiency of the indictments. We will consider first the indictments and counts charging violations of the Building Code. The first count of the indictment in case No. 5180, after the formal commencement, charges that Esther Kirsner and others, "on the twenty-third day of October, in the year of our Lord nineteen hundred and forty-two, at the City aforesaid, in violation of a certain Ordinance of the Mayor and City Council of Baltimore, theretofore duly enacted and ordained, to-wit, Paragraphs 4387, 4391, 1400 and 2507 of Article Three of the Baltimore City Code of the year of our Lord nineteen hundred and twenty-seven, as repealed and reordained by Ordinance 578 of the Mayor and City Council of Baltimore, approved on the thirty-first day of October, in the year of our Lord

4

nineteen hundred and forty-one, being then and there the owners of a certain lot of ground, cellar, premise and possession, in said City, fronting on Linden Avenue, being number Eighteen Hundred and Twenty-two Linden Avenue, in said City, the said premises being occupied as a dwelling, did unlawfully fail to make the electrical equipment therein conform to the provisions of the Baltimore City Code, thus constituting an imminent menace to life or health of persons residing in said premises and did unlawfully fail to keep said dwelling and every part thereof in good repair and in a safe condition while in use; and did unlawfully do certain work and commence certain repairs on said premises without first having obtained a proper permit from the Buildings Engineer of Baltimore City; and did unlawfully fail to correct and remedy conditions on said premises which were unsafe and dangerous to the safety of persons residing therein; against the form of the Ordinance in such case made and provided and against the peace, government and dignity of the State."

The other counts under the Building Code are in the same general form, referring to violations of other Paragraphs of the Code, as to other properties on other days.

In case No. 5181 the first count charges violations of Paragraphs 4345, 4346, 4383, 4387, 4391 and 2507 of the Building Code. In case No. 5182 the paragraphs alleged to have been violated are 4385, 4387, 4391 and 2507. The indictment in case No. 5183 alleges violations of Paragraphs 4352, 5387, 4391, 1400 and 2507. The first count in case No. 5184 alleges violations of Paragraphs 4352, 4385, 4345, 4375, 4387, 4391, 9482, 1400 and 2507. In case No. 5185 the first count charges violations of Paragraphs 4350, 4365 and 4391. The indictment in case No. 5187 refers by number to only Paragraph 4350, which pertains to exit requirements for dwellings, but then proceeds to charge not only a violation of this paragraph but also of Paragraph 4391, which provides that every dwelling and all parts thereof shall be kept in good repair and in a safe condition while in use.

The Building Code is contained in a printed volume of 1434 pages and consists of many chapters, divided into sections and paragraphs. By Paragraphs 1912 to 1919, inclusive, violations of its many provisions are divided into six separate classes, namely: safety, health, fire, administrative, technical and miscellaneous violations. The penalties for the various classes of violations are prescribed by Paragraphs 1922 to 1929, inclusive. The maximum fine for all classes is $100 but the minimum ranges from $5 for an administrative or miscellaneous violation to $50 for a safety violation. The minimum fine for technical violations is $10 and for fire and health violations is $25.

Of the violations charged in the first count of the indictment in case No. 5180, which we have quoted at length herein, the violation of Paragraph 4387 is a technical violation, of Paragraph 4391, a miscellaneous violation, of Paragraph 1400, an administrative violation, and of Paragraph 2507, a safety violation. It is unnecessary to detail the classes into which the violations charged in the other counts fall. For illustration, it is noted that of the nine violations charged in the first count of the indictment in case No. 5184, three are safety violations, two are technical violations, two are fire violations, one is a miscellaneous violation, and one is an administrative violation.

The appellant urges that each Building Code count charges two or more separate and independent offenses and is thus bad for duplicity. It is the general rule of the common law that an indictment should not charge in the same count the commission of two or more substantive offenses, and in the event that it does so it is objectionable because of duplicity. 27 Am. Jur. 683; 31 C. J. 758; 22 Cyc. 376; *Mohler v. State,* 120 Md. 325, 87 A. 671; *Weinstein v. State,* 146 Md. 80, 125 A. 889; *Jackson v. State,* 176 Md. 399, 5 A. 2d 282. But several distinct averments in a single count will not constitute duplicity if they collectively constitute but a single charge or transaction. This principle was recognized by this court

6

in the case of *Mohler v. State,* supra, where at page 327 of 120 Md., at page 671 of 87 A., it is said:

"But it is equally recognized, that a count is not double because it charges several related acts, all of which enter into and constitute one offense, although such acts may in themselves constitute distinct offenses. If the acts alleged are of the same nature, and so connected that they form one criminal transaction, they may be joined in one count, although, separately considered, they are distinct offenses."

The rule is stated in *Hochheimer's Criminal Law,* Second Edition, section 96, as follows: "Several acts, each in itself criminal, may be charged in one count, if they are of the same nature and so connected as to form one criminal transaction, and within this rule, acts made punishable by a statute in the alternative may be charged conjunctively in one count, provided the offenses are not repugnant or subject to different punishments." The same rule is laid down in *Bishop's New Criminal Procedure,* Vol. 1, Sections 432-441, inclusive.

The question for our decision therefore is: Do the several Building Code counts each charge one criminal transaction or two or more distinct and separate offenses? A careful study of the counts fails to disclose any one offense charged thereby. Each count charges several distinct and separate violations of certain enumerated paragraphs of the Building Code, which violations fall within different classifications under the Building Code and subject the offender, upon conviction thereof, to diverse penalties. What single criminal transaction is charged in the first count is case No. 5180, wherein the appellant is accused of failing to make the electrical equipment in the dwelling at 1822 Linden Avenue conform to the provisions of the Building Code, of failing to keep said dwelling and every part thereof in good repair and in a safe condition, of making certain repairs thereon without first obtaining a proper permit from the Buildings Engineer, and of failing to correct and remedy conditions on said premises? Are not these four separate

and distinct offenses, entirely unrelated, and violating four distinct paragraphs of the Building Code, which as he have stated above fall within four different classifications and are punishable by different penalties? It is our conclusion that the first count in case No. 5180 does not charge one criminal transaction but a series of separate and mutually independent offenses, which are not stages in one transaction and which are not so connected as to form a single offense. We therefore hold that the said count is duplicitous and that the demurrer thereto should have been sustained. We do not find in this count such a recital of facts, as was contained in the indictment considered by this court in the case of *Petrushansky v. State*, 182 Md. 164, 32 A. 2d 696, sufficient to warrant our holding that it is good as a common law indictment.

The same is true as to all other Building Code counts. We deem it unnecessary to discuss in detail the counts in cases Nos. 5181, 5182, 5183, 5184 and 5185. The indictment in case No. 5187 differs from the other cases in that it charges by number only the violation of Paragraph 4350, which is a safety violation, but then proceeds in fact to charge not only this violation, relating to safe and adequate exits, but also the failure to keep the dwelling and every part thereof in good repair and in a safe condition while in use. This is a miscellaneous violation, set forth in Paragraph 4391, and it is a violation with which the appellant was charged, by specific paragraph number, in all other Building Code counts. We feel that it, too, charges two separate and distinct offenses under the Building Code and is, therefore, duplicitous.

Holding, as we do, that all Building Code counts are bad because of duplicity, it is unnecessary for us to pass upon the other objections urged by the appellant against them or some of them, namely: that they should aver notice by the municipal authorities to correct the conditions complained of and the failure to comply therewith; that there should be an allegation that the defendant was in possession of the property as to certain of the violations charged; and that the indictment should clearly state

whether the property was an existing dwelling at the time of the passage of the ordinance. Without deciding that these are necessary allegations, we feel that, because of the complexity of the Building Code, they are desirable.

There are five counts charging violations of the Health Ordinance: the second count in cases Nos. 5180, 5181, 5184 and 5185, and the indictment in case No. 5186. The second count in case No. 5180 charges that the appellant and others "on the twenty-third day of October, in the year of our Lord nineteen hundred and forty-two, at the City aforesaid, in violation of a certain Ordinance of the Mayor and City Council of Baltimore, theretofore duly enacted and ordained, to-wit, Ordinance 384, passed and approved by the Mayor and City Council of Baltimore on the sixth day of March, in the year of our Lord nineteen hundred and forty-one, said Ordinance adding eight new sections to Article 16 of the Baltimore City Code of 1927, title "Health", being then and there the owners of a certain lot, ground, cellar, premise and possession, in said City, fronting on Linden Avenue, to-wit, number Eighteen Hundred and Twenty-two Linden Avenue, in said City, the said premises being then and there occupied as a dwelling, unlawfully did fail to keep said lot of ground, and every part thereof, clean and free from any accumulation of dirt, filth, rubbish, garbage and similar matter; and did unlawfully fail to provide at least one window opening to the outside air in each and every sleeping room on said premises; and did unlawfully permit the use of the basement or cellar of said premises as a dwelling unit without first making the walls and floor water and damp proof, and without first providing adequate lighting and ventilating facilities; against the form of the Ordinance in such case made and provided, and against the peace, government and dignity of the State".

This count charges a violation of section 156 A of the Health Ordinance, and, in addition, violations of two paragraphs of the Building Code, Paragraphs 4365 and 4345, the first a health violation and the second a fire violation.

The second count in case No. 5181, refers to 1923 Eutaw Place, charges the same violation of section 156 A and in addition that the owners did "unlawfully fail to keep said lot, ground and premises free from vermin and rodent infestation", and did "unlawfully permit the plaster and wall paper to become and remain broken and cracked, permitting vermin harborage", also violations of section 156 A. There are additional charges of violations of Paragraphs 4375 and 4376 of the Building Code, both safety violations. There is the further charge of permitting drainage water to pool in the yard, which appears to be a violation of neither the Health Ordinance nor the Building Code.

The second count in case No. 5184 charges only violations of the Health Ordinance, at 1826 Linden Avenue on May 13, 1942. It is charged that the owners "unlawfully did fail to keep said lot and ground, and every part thereof clean and free from any accumulation of dirt, filth, rubbish, garbage and similar matter; and did unlawfully fail to provide adequate receptacles to contain all garbage, rubbish and ashes as were necessary; and did unlawfully fail to keep said lot, ground and premises free from vermin and rodent infestation".

The second count in case No. 5185 charges only the single violation of section 156 A of the Health Ordinance, that the owners on September 19, 1942, at 1623 Linden Avenue, "unlawfully did fail to keep said lot and ground, and every part thereof clean and free from any accumulation of dirt, filth, rubbish, garbage and similar matter".

The indictment in case No. 5186 contains but a single count, drawn as a violation of the Health Ordinance. It contains, however, seven separate and distinct charges, four pertaining to the accumulation of dirt and rubbish, to vermin and rodent infestation, to leaking roof, and to inadequate drainage from the roof, under Sections 156 A and 156 B of the Health Ordinance, and three charging violations of Paragraphs 4345, 4365 and 4347 of the Building Code, the first and third being fire violations, and the second a health violation.

From what we have already said with reference to the indictments under the Building Code, we must conclude that the second count in case No. 5180, the second count in case No. 5181 and the indictment in case No. 5186, joining, as they do, violations of the Health Ordinance with entirely unconnected violations of the Building Code, are duplicitous and the demurrers thereto should have been sustained. This leaves for our consideration the second counts in cases Nos. 5184 and 5185.

The Health Ordinance is set out in full in the opinion in the case of *Petrushansky v. State,* supra, and it is unnecessary to repeat it here. The violations charged in cases Nos. 5184 and 5185 are all violations of section 156 A, which provides, in part, as follows:

"Every dwelling and every part thereof shall be kept clean and free from any accumulation of dirt, filth, rubbish, garbage or similar matter, and shall be kept free from vermin or rodent infestation. All yards, lawns and courts shall be similarly kept clean and free from rodent infestation. It shall be the duty of each occupant of a dwelling unit to keep in a clean condition that portion of the property which he occupies or over which he has exclusive control. If the occupant shall fail to keep his portion of the property clean the Commissioner of Health may send a written notice to the occupant to abate such nuisance within the time specified in said notice. Failure of the occupant to comply with such notice shall be deemed a violation of this ordinance and upon conviction the occupant shall be subject to the penalty or penalties herein provided."

In addition to the provision for notice to the occupant contained in the above-quoted section, section 156 C provides that "whenever any dwelling, or any building, structure, excavation, business pursuit, matter, condition or thing in or about a dwelling or the lot on which it is situated, or the plumbing, sewerage, drainage, light or ventilation thereof, is found by the Commissioner of Health to be dangerous or detrimental to life or health, the Commissioner of Health may order that the matter,

condition or thing be removed, abated, suspended, altered or otherwise improved, as his order shall specify". There are other provisions relative to notice in other sections of the ordinance. From the quoted provisions it seems clear that the criminal responsibility of either owner or occupant of the property is predicated upon notice from the Commissioner of Health to remedy the condition complained of and upon the failure of the owner or occupant to comply with said notice or order. In any criminal proceeding against the owner of property, under this ordinance, it is, therefore, necessary to allege in the indictment that notice was given by the Commissioner of Health and that the owner failed to comply therewith. The indictment, approved by this court in the case of *Petrushansky v. State*, supra, contained these necessary allegations. All the counts under the Health Ordinance are bad for this reason and the demurrers to them should have been sustained. It becomes unnecessary for us to discuss the other objections urged by the appellant to these counts. While it is true that this court said in *Petrushansky v. State*, supra [182 Md. 164, 32 A. 2d 700], that "the one who is responsible is the one who creates or maintains the nuisance", and that "the landlord will not be liable for a nuisance created on the premises by the tenant", there may arise instances where an owner, not the occupant of the premises, may nevertheless be in possession of the same, or a part thereof, within the meaning of the ordinance, and responsible for the maintenance of conditions thereon constituting a violation of the ordinance. We are thinking, particularly, of residences converted into small apartments and rented to many different persons, with none of the occupants leasing for their exclusive use the hallways and the grounds surrounding the premises.

Our conclusion is that none of the indictments contained a valid count and it therefore follows that no valid sentence could have been passed in any of the cases. We might stop here, without discussing the sentences which were imposed. But the matter is of such general im-

portance that we feel that we should go further and discuss the sentences.  As we have already stated, the maximum penalty which could be imposed for any one violation of the Building Code is $100.  Under the Health Ordinance the maximum penalty for any one violation is $50.  Both ordinances provide that each day's violation shall constitute a separate offense.  Each count in the indictments against the appellant charges the violation on a single day specified therein.  Not more than one day's violation could be charged in a single count.  If the State desired to prosecute for successive violations on other days it would be required to secure a separate count or indictment for each day's violation.  The general rule as stated in 31 C. J. 771 is that "where each day a prohibited business is carried on is made a separate offense by statute, it is not proper to charge the carrying on of a business for several days in a single count".  *Scales v. State,* 46 Tex. Cr. 296, 81 S. W. 947, 948, 66 L. R. A. 730, 108 Am. St. Rep. 1014.  To charge the offense for more than one day would be charging more than one offense and would render the count duplicitous.  In discussing the matter in *Scales v. State,* supra, the Court said:  "In this indictment the separate days are not set out in distinct counts, but it seems that the attempt was here made to charge a separate offense for each day in one count.  We believe that the separate occasions should be set out in distinct counts, and the dates and proof should correspond with some degree of particularity, so that, in case of conviction or acquittal, appellant might be secure in his right against being placed in jeopardy again for the same offense.  In our opinion, the indictment is vicious in the respect pointed out".

If the indictments had been valid, the maximum penalty which could have been imposed upon each Building Code count was $100, and the maximum under each Health Ordinance count was $50.

For the reasons stated the judgments in all the cases must be reversed.

*Judgments in all cases reversed.*